JS-6

**FILED**
CLERK, U.S. DISTRICT COURT

9/9/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _____CW_____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| RICK MELEAD, an individual, on behalf of himself, and on behalf of the general public similarly situated, | Case No.: SACV 20-01224-CJC(ADSx) |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [Dkt. 9]** |
| v. | |
| TVI, INC., d.b.a. SAVERS; and DOES 1 through 50, | |
| Defendants. | |

## I.  INTRODUCTION

Plaintiff Rick Melead filed this putative wage-and-hour class action against Defendant TVI, Inc., d/b/a Savers ("TVI") and unnamed Does in Orange County Superior Court.  (Dkt. 1-2 Ex. A [Complaint, hereinafter "Compl."].)  TVI removed the

action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  (Dkt. 1 [Notice of Removal, hereinafter "NOR"].)  Before the Court is Plaintiff's motion to remand.  (Dkt. 9 [hereinafter "Mot."].)  For the following reasons, the motion is **GRANTED**.[1]

## II.  BACKGROUND

Plaintiff worked for TVI as an hourly non-exempt sales clerk from October 2015 to October 2019 in Yorba Linda, California.  (Compl. ¶ 6.)  The Complaint does not include any other details about Plaintiff's role, salary, or terms of employment.

On May 11, 2020, Plaintiff brought this suit in Orange County Superior Court. (Compl.)  Plaintiff asserts a claim for (1) violations of California's Unfair Competition Law, as well as six causes of action under California's Labor Code for (2) failure to pay overtime wages, (3) failure to pay minimum wages, (4) failure to provide meal periods, (5) failure to provide rest periods, (6) failure to provide accurate itemized statements, and (7) failure to pay wages when due.  (*See id.*)  Plaintiff asserts these claims on behalf of a proposed class of "current and former non-exempt California employees [of TVI] . . . at any time between April 6, 2016 [and] a date determined by the Court."  (*Id.* ¶ 7.)

Plaintiff alleges broadly that TVI had a "uniform policy and practice which" failed to provide Plaintiff and the class with (1) legally compliant meal and rest periods, (2) pay for all hours worked, and (3) accurate itemized wage statements.  (*Id.* ¶ 8.)  The boilerplate allegations in the complaint assert that TVI failed to properly compensate employees, forced them to work through required breaks, and failed to keep accurate

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for September 14, 2020 at 1:30 p.m. is hereby vacated and off calendar.

records.  (*See id.* ¶¶ 13–29.)  Plaintiff has not alleged any other facts about TVI's practices and policies, the frequency of the alleged Labor Code violations, or the resulting damages.

Plaintiff served TVI with a summons and the Complaint on June 11, 2020.  (*See* Dkt. 1-2 Ex. B.)  On July 10, 2020, TVI filed a Notice of Removal to this Court pursuant to CAFA.  (NOR.)  The Court now considers Plaintiff's motion to remand to state court.

## III. ANALYSIS

A civil action brought in a state court, but over which a federal court may exercise original jurisdiction, may be removed to a federal district court by the defendant.  CAFA provides original federal jurisdiction over class actions in which the amount in controversy exceeds $5 million, there is minimal diversity between the parties, and the number of proposed class members is at least 100.  28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B).  "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court. . . [and] intended CAFA to be interpreted expansively."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  The Supreme Court has also held that "no antiremoval presumption attends cases invoking CAFA" because CAFA was enacted to facilitate federal courts' adjudication of certain class actions.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 550 (2014).

Plaintiff contends that this case must be remanded because TVI has not properly established that the amount in controversy exceeds $5 million.[2]  "[A] defendant's notice

---

[2] Plaintiff does not dispute that the other two CAFA requirements—minimal diversity and minimum class size—have been met.  (*See generally* Dkt. 9-1 [Plaintiff's Memorandum of Points & Authorities, hereinafter "Mem."].)  Plaintiff and TVI are citizens of different states for diversity purposes, and records show that TVI employed over 100 qualifying class members.  (*See* NOR ¶¶ 13–20, 29–30.)

of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554. However, if the asserted amount in controversy is contested after removal, "[e]vidence establishing the amount is required." *Id.* at 554. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 550. Ultimately, the defendants bear the burden of proving that the amount in controversy is met. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013). "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.

TVI argues that it reaches the $5 million threshold on the "waiting time penalties" alone, estimating them at $6,633,600. In the alternative, TVI contends that it can reach the threshold based on the following "conservative" estimates:

- Waiting time penalties: $4,772,875.20
- Missed meal breaks: $1,754,034.40
- Missed rest breaks: $1,754,034.40
- Attorneys' Fees: $250,000
- **Total**: **$8,530,944**

(Dkt. 12 [TVI's Opposition to Mot., hereinafter "Opp."] at 6–8.) After reviewing the allegations in the complaint and the evidence presented by TVI, the Court finds that these estimates rely on unreasonable and unsubstantiated assumptions.

       1.    <u>Waiting Time Penalties</u>

Plaintiff asserts a cause of action for violations of California Labor Code § 203, which provides that "[i]f an employer willfully fails to pay, without abatement or reduction . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203. In other words, an employer accrues a penalty of one day's wages for every day that the employee's final wages are willfully withheld—with a maximum penalty of thirty days' wages. *See id.* TVI asserts that the amount in controversy for Plaintiff's final wages claim is $6,633,600. (Opp. at 4.) In its alternate scenario, TVI assumes waiting time penalties of $4,772,875.20. (Opp. at 6.) Both estimates rely on several assumptions that the Court finds unreasonable.

To calculate the amount in controversy for Plaintiff's final wages claim, TVI submits a declaration from Teresa Moss, its Director of Team Member Relations and Employment Law Compliance. (Dkt. 1-3 [hereinafter "Moss Decl."].) Based on Moss's review of company records, she offers the following facts: (1) TVI terminated 2,744 employees in the relevant period, (2) the "combined average hourly rate" paid to the terminated employees was $13.82, and (3) there have been approximately 835 active employees in California during the relevant time period. (*Id.*) No other evidence was presented by either party.

As is common in wage-and-hour cases, the amount in controversy turns on the frequency of the alleged violations of California labor laws. *See, e.g.*, *Gant v. ALDI, Inc.*, 2020 WL 1329909 (C.D. Cal. Mar. 20, 2020); *Lopez v. First Student, Inc.*, 2019 WL 8137149 (C.D. Cal. Dec. 2, 2019). The complaint does not specify how often the violations occurred, but alleges a "uniform policy and practice." (Compl. ¶ 8.) In *Arias v. Residence Inn by Marriott*, the Ninth Circuit addressed how courts should resolve the resulting ambiguity. 936 F.3d 920 (9th Cir. 2019). It explained that a removing

defendant is entitled to make "reasonable assumptions" about violation rates to estimate the amount in controversy. *Id.* at 925. "[A]n assumption may be reasonable if it is founded on the allegations of the complaint." *Id.* These assumptions must also cohere with the actual evidence presented by the parties. *See id.*

TVI assumes that 2,000 employees who were terminated during the relevant period were denied final wages for the statutory maximum thirty days. (*See* Opp. at 4; NOR ¶ 25). It multiplied 2,000 employees, by 30 days, 8 hours per day, and by the $13.82 average hourly rate to reach its $6,633,600 final wages claim total. (Opp. at 4.) While TVI calculates the waiting time penalty using 73% of the total terminated employees, it argues that it could have used 100% because Plaintiff alleges a "uniform policy and practice" of violations. (Opp. at 4–5.) Plaintiff counters, arguing that his Complaint merely alleges "sporadic violations 'from time to time.'" (Dkt. 14 [Plaintiff's Reply Brief] at 4; *see also* Compl. ¶¶ 14–17, 20–21, 24.) "[W]here a plaintiff's complaint specifically alleges a 'uniform' practice, if a defendant in its amount-in-controversy calculus assumes a 100 percent violation rate *and* the plaintiff offers no competent evidence in rebuttal to a defendant's showing, courts have found a defendant's assumption to be reasonable." *Hernandez v. Starbucks Corp.*, 2017 WL 2971858, at *3 (C.D. Cal. July 12, 2017).

Reading the Complaint as a whole, the Court finds it does not support a 100% violation rate. *See Brancaccio v. Knauf Insulation, Inc.*, 2020 WL 1686253, at *4 (C.D. Cal. Apr. 7, 2020) (citing *Arias*, 936 F.3d at 926) ("A removing party can assume extreme violation rates only if supported by allegations in the pleadings."). The gap between a 100% violation rate and violations "from time to time" is immense. A uniform policy and practice of committing violations from time to time does not allege that a violation occurred with every employee. Because Plaintiff's allegations in the pleadings are vague—likely purposefully so—TVI cannot rely on Plaintiff's complaint alone and

must offer additional evidence or reasoning to justify its assumed violation rate.  *See Ibarra*, 775 F.3d at 1199.

While defendants may make reasonable assumptions based on the complaint and from evidence, "those assumptions cannot be pulled from thin air but need some reasonable ground underlying them."  *Ibarra*, 775 F.3d at 1199; *see also Rutledge v. Healthport Technologies, LLC*, 2017 WL 728375, at *2 (N.D. Cal. Feb. 24, 2017) ("[Defendants are] not permitted to pull potential violation rates out of thin air.").  Moss's cursory declaration of the number of employees in the purported class and combined average hourly rate does nothing to establish a violation rate.  TVI also fails to provide any reasoning for the 73% rate other than it "rounded-down" to the nearest thousand. (Opp. at 4.)  The assertion that it could have used a 100% violation rate does not independently justify a lower rate.

TVI has also not justified its assumption of an 8-hour work day for every employee class member.  Crucially, TVI has not provided any evidence suggesting how many of the 2,744 terminated employees were full-time employees, as opposed to part-time employees.  Nor has it provided an average of hours worked by class members. Accordingly, TVI has failed to sustain its evidentiary burden regarding waiting-period penalties for purposes of removal.

### 2.    Missed Meal and Rest Breaks

Like its assumed waiting time penalties, TVI's assumed meal break and rest break penalties are also unsupported by the evidence before the Court.  TVI assumes one meal break violation and one rest break violation per 5-day work week, calculating total meal and rest break claims of $3,508,068.80.  (Opp. at 8.)  Moss's declaration sets forth only the number of class members and their average hourly pay rate.  She does not address

anything that would provide factual support for TVI's assumption that one meal break violation and one rest break violation occurred per work week.  Because TVI "provides no factual underpinning for the assumption that a meal and rest break violation occurred one time per week," the Court finds it has failed to carry its evidentiary burden for purposes of removal.  *Weston v. Helmerich & Payne Inter. Drilling Co.*, 2013 WL 5274283, at *6 (E.D. Cal. Sept. 17, 2013).

### 3.   Attorneys' Fees

TVI calculated its exposure for attorneys' fees as $250,000.  (NOR ¶ 26.)  While courts in the Ninth Circuit have considered potential attorneys' fees in calculating the amount in controversy in wage-and-hour cases, TVI's fee estimate is based on a conjectural damages calculation and should be disregarded.  *See Campbell v. Vitran Express, Inc.*, 2010 WL 4971944, at *4 (C.D. Cal. Aug. 16, 2010) ("[B]ecause such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee, which Defendant recommends, would necessarily place the amount in controversy over the $5,000,000 CAFA threshold.").

//
//
//
//
//
//
//
//
//
//

**IV.  CONCLUSION**

      For the foregoing reasons, TVI has not carried its burden to show that the Court has subject matter jurisdiction over this action under CAFA.  Accordingly, Plaintiff's motion to remand is **GRANTED**, and this case is hereby **REMANDED** to Orange County Superior Court.

DATED:    September 9, 2020

                    CORMAC J. CARNEY

                  UNITED STATES DISTRICT JUDGE